UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

MICHAEL D. WOOTEN,

     Petitioner,

v.                                 CASE NO. 6:15-cv-31-Orl-31TBS

SECRETARY, DEPARTMENT
OF CORRECTIONS, et al.,

     Respondents.

_____/

**ORDER**

This cause is before the Court on a Petition for Writ of Habeas Corpus ("Petition," Doc. 1) filed pursuant to 28 U.S.C. § 2254. Thereafter, Respondents filed a Response to the Petition (Doc. 9) and a Supplemental Response to the Petition (Doc. 30). Petitioner filed a Reply to the Response (Doc. 13) and a Reply to the Supplemental Response (Doc. 31). Petitioner alleges twenty-four claims for relief in the Petition. For the following reasons, the Petition is denied.

## I.    PROCEDURAL HISTORY

Petitioner was indicted on one count of first degree murder (count one) and one count of kidnapping (count two) (Doc. 9-1 at 5). Petitioner and his co-defendant, Ray Jackson ("Jackson"), were jointly tried, and the State sought the death penalty (Doc. Nos. 9-1 at 21; 30-1).[1] At trial, the State presented evidence that victim Pallis Paulk ("victim")

---

[1] Jackson was convicted as charged (Doc. 9-24 at 51) and sentenced to death, however, he was recently resentenced to life in prison. *See* Case Number 6:14-cv-1873-Orl-40TBS, Doc. Nos. 37 and 40.

was reported missing on approximately November 26, 2004, several weeks after she was last seen (Doc. 9-13 at 91-93, 104). The victim was known to work as a stripper, and she used drugs including cocaine and ecstasy. (Doc. Nos. 9-13 at 113-14; 9-14 at 1-2). The victim's body was discovered on April 17, 2005, in Daytona Beach, Florida, in a shallow grave (Doc. 9-14 at 8-9). The victim's body was so badly decomposed that only bones were left, and the medical examiner was unable to perform an autopsy. *Id.* at 9, 13, and 72. However, the medical examiner opined that based on the manner of disposal of the body, the cause of death was likely homicide. *Id.* at 78.

Calvin Morris ("Morris"), the victim's cousin, testified that he spoke with the victim on November 9, 2004, and she told him she had a "lick," otherwise known as a robbery (Doc. 9-15 at 1). Morris picked the victim up from Jackson's apartment. *Id.* at 3-4. The victim was carrying a blue backpack and had men's jewelry, drugs, $800, and a cellular telephone inside the bag. *Id.* at 6-9. Morris later took the victim to Jimbo Vreen's ("Vreen") house to buy drugs. *Id.* at 13. Petitioner and Jackson were present when they arrived at Vreen's house. *Id.* at 16-17.

After Jackson and the victim exited Vreen's house, Jackson walked behind the victim with a firearm tucked into his waistband. *Id.* at 31. Jackson told the victim to get into a red hatchback vehicle[2]  with Petitioner, and the victim complied although she appeared as if she did not want to go with the men. *Id.* at 33-34. Morris tried to follow the vehicle,

---

[2]  Jameel McLaury ("McLaury") testified that he sold his red hatchback to Petitioner in November 2004 (Doc. 9-17 at 119-20).

but Jackson pointed a gun out the window. *Id.* at 34. Morris told his grandmother what had transpired and admitted that he did not contact police until March 2005. *Id.* at 35-36, 39. Morris also testified that Jackson threatened to kill him for speaking with police. *Id.* at 56. Morris' grandmother corroborated Morris' testimony (Doc. 9-16 at 85-89).

Vreen testified similarly to Morris and agreed that Jackson had arrived at his home in a red hatchback vehicle looking for the victim. *Id.* at 105-06. Petitioner accompanied Jackson. *Id.* at 108. However, Vreen stated that the victim willingly left with Jackson and Petitioner. *Id.* at 110-113. Vreen was threatened in relation to this case (Doc. 9-17 at 7).

Latisha Allen ("Allen") testified that she had been friends with Jackson and knew Petitioner (Doc. 9-17 at 28-32). Allen recalled that on November 9, 2004, her boyfriend had been arrested. *Id.* at 38-41. That same evening, she returned to her apartment and observed a red hatchback vehicle that she knew was driven by Petitioner parked outside. *Id.* at 45-46. When she walked into her apartment, Jackson was sitting in the hallway and told her he had been robbed. *Id.* at 48. Allen asked Jackson who had committed the robbery, and he said to "look." *Id.* at 49. Allen observed the victim sitting in the bathroom tub with her hands tied. *Id.* at 49-50. Allen asked Jackson if he intended to kill the victim, and he nodded, "Yes." *Id.* at 57. Additionally, Allen observed Petitioner with plastic ties. *Id.*

Allen left to bail her boyfriend out of jail, and Jackson was not at her home when she returned. *Id.* at 71-72. However, she noticed her bathroom smelled like it had been cleaned with bleach. *Id.* Allen did not go to the police until April 20, 2005 because she was scared. *Id.* at 74-76.

Brentson Thomas ("Thomas"), the brother of Allen's boyfriend, testified that he saw Petitioner and Jackson at Allen's apartment on November 9, 2004. *Id.* at 132. Thomas stated that Petitioner and Jackson would not let anyone go near the back area of the apartment by the bedrooms (Doc. 9-18 at 1-2).

Frederick Hunt ("Hunt") testified that he was arrested in this case as a principal to kidnapping. *Id.* at 13. Hunt was at Allen's house on November 9, 2004, and corroborated Allen's testimony regarding the victim being held in the bathroom. *Id.* at 36-38. Hunt stated that Petitioner had a bag containing white string ties, plastic gloves, and garden gloves. *Id.* at 48. An unidentified person left to obtain duct tape, and when he returned, Petitioner and Jackson took the duct tape into the bathroom. *Id.* at 50-51. Jackson then removed the victim from the bathroom, and Hunt saw that she was taped around her hands and ankles. *Id.* at 59. Jackson carried the victim out of the house and Hunt, Petitioner, Thomas, and Charles Bush ("Bush") assisted in placing the victim in the trunk of Jackson's car. *Id.* at 59-62. Hunt heard the victim state, "Please, Ray, don't put me in the trunk. Please, Ray, I'm sorry, I'm so sorry." *Id.* at 61.

Hunt testified that the victim would not lie down in the trunk, and Jackson punched her with a closed fist. *Id.* at 63. Hunt hit the victim's legs so that she would lie down and they could close the trunk. *Id.* After the incident, Jackson made a comment to Hunt that he was not worried because "they ain't got no body." *Id.* at 75. When the victim's body was found, Hunt went with Allen to make a statement to police. *Id.* at 127. Later, Hunt made a recorded telephone call to Petitioner, wherein Petitioner stated that he did not want his

4

name to "come up in that charge" and denied his involvement (Doc. 9-19 at 12-15).

Quintin Wallace ("Wallace") testified on Petitioner's behalf and told the jury that Hunt stated he had lied about Jackson and Petitioner's involvement in the crimes (Doc. 9-20 at 106-08). Petitioner testified that in November 2004, he lived and worked in Jacksonville, Florida, and was not present in Orlando because his mother's birthday had been the previous day. *Id.* at 110, 113. Petitioner also testified that he did not purchase the red hatchback vehicle until February 2005. *Id.* at 114. Petitioner admitted that he had previously been convicted of six felonies. *Id.* at 112. Finally, Petitioner explained that during the recorded telephone call, he thought that Hunt was talking about the murder of Jackson's cousin. *Id.* at 116.

The jury convicted Petitioner as charged (Doc. 9-24 at 52). The trial court sentenced Petitioner to consecutive terms of life in prison and directed the sentence for count two be served as a prison releasee reoffender. *Id.* at 75-81. Petitioner appealed, and the Fifth District Court of Appeal ("Fifth DCA") affirmed *per curiam* (Doc. 9-26 at 26).

Petitioner filed a motion for post-conviction relief pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure. *Id.* at 31-49. After filing several amended motions, the trial court determined an evidentiary hearing was warranted on four claims (Doc. Nos. 9-27 at 67-82; 9-29 at 38-42). After the evidentiary hearing, the trial court denied the remaining claims (Doc. 9-29 at 46-163). Petitioner appealed, and the Fifth DCA affirmed *per curiam* (Doc. 30 at 105).

## II. LEGAL STANDARDS

### A. Standard of Review Under the Antiterrorism Effective Death Penalty Act ("AEDPA")

Pursuant to the AEDPA, federal habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The phrase "clearly established Federal law," encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

"[S]ection 2254(d)(1) provides two separate bases for reviewing state court decisions; the 'contrary to' and 'unreasonable application' clauses articulate independent considerations a federal court must consider." *Maharaj v. Sec'y for Dep't of Corr.*, 432 F.3d 1292, 1308 (11th Cir. 2005). Even if the federal court concludes that the state court applied federal law incorrectly, habeas relief is appropriate only if that application was "objectively unreasonable." *Parker v. Head*, 244 F.3d 831, 835 (11th Cir. 2001). Whether a state court's decision was an unreasonable application of law must be assessed in light of the record before the state court. *Holland v. Jackson*, 542 U.S. 649, 652 (2004) (*per curiam*);

Finally, under § 2254(d)(2), a federal court may grant a writ of habeas corpus if the

state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." A determination of a factual issue made by a state court, however, shall be presumed correct, and the habeas petitioner shall have the burden of rebutting the presumption of correctness by clear and convincing evidence. *See Parker*, 244 F.3d at 835-36; 28 U.S.C. § 2254(e)(1).

**B.      Standard for Ineffective Assistance of Counsel**

The United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984), established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance: (1) whether counsel's performance was deficient and "fell below an objective standard of reasonableness"; and (2) whether the deficient performance prejudiced the defense. *Id*. at 687-88. A court must adhere to a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id*. at 689-90. "Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id*. at 690; *Gates v. Zant*, 863 F.2d 1492, 1497 (11th Cir. 1989). In *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993), the United States Supreme Court clarified that the prejudice prong of the test does not focus solely on mere outcome determination; rather, to establish prejudice, a criminal defendant must show that counsel's deficient representation rendered the result of the trial fundamentally unfair or unreliable.

### III.    ANALYSIS

#### A.    Claim One

Petitioner alleges trial counsel was ineffective for failing to move for a ruling on the motion for a statement of particulars and for failing to preserve the matter for appellate review (Doc. 1 at 6). The indictment alleged that the kidnapping and murder took placed on or between November 1, 2004, and November 25, 2004 (Doc. 9-1 at 5). Petitioner contends that counsel's failure to obtain a ruling on the motion prevented him from presenting an alibi defense at trial (Doc. 1 at 6).

Petitioner raised this claim in his amended Rule 3.850 motion (Doc. 9-26 at 96-97). The trial court denied the second portion of the claim and held an evidentiary hearing on the issue of whether trial counsel was ineffective for failing to obtain a ruling on the motion for a statement of particulars (Doc. 9-29 at 41).

At the evidentiary hearing on this claim, defense counsel Peyton Quarles ("Quarles") testified that although he did not obtain a ruling on the motion for a statement of particulars, he did not think a ruling was necessary (Doc. 9-29 at 117). Quarles explained that the defense had learned of the date of the crimes during discovery, and he "felt confident" that they knew when the kidnapping took place. *Id.* at 117-18. Additionally, Quarles testified that he had investigated a potential alibi for Petitioner by seeking employment records and asking a family member to testify at trial. *Id.* at 118-19. However, counsel's efforts were unsuccessful. *Id.*

The trial court found Quarles' testimony was credible and concluded Petitioner

was aware of the date that the crime occurred prior to trial. *Id.* at 144. This Court must accept the state court's credibility determinations. *See, e.g., Baldwin v. Johnson*, 152 F.3d 1304, 1316 (11th Cir. 1998) ("We must accept the state court's credibility determination and thus credit [counsels'] testimony over [petitioner's]."); *Consalvo v. Sec'y for Dep't of Corr.*, 664 F.3d 842, 845 (11th Cir. 2011).

The record reflects that Petitioner's counsel knew when the crime was alleged to have been committed, and took that date into account with respect to Petitioner's alibi defense. Therefore, Petitioner has not demonstrated deficient performance or prejudice because a reasonable probability does not exist that but for counsel's actions the outcome of trial would have been different. The state court's factual findings are presumed correct, and Petitioner has not rebutted those findings by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Parker*, 244 F.3d at 835-36. Thus, claim one is denied pursuant to § 2254(d).

## B.     Claim Two

Petitioner argues trial counsel was ineffective for failing to "properly" object to the state's motion to consolidate the defendants' trials (Doc. 1 at 7). Petitioner contends that if counsel had objected on the basis that consolidation was untimely, the motion would have been granted.[3] *Id.* Petitioner raised this claim in his amended Rule 3.850 motion

---

[3] Counsel objected to the consolidation based on potential *Bruton* issues that might arise during trial (Doc. 9-1 at 6-10); *see Bruton v. United States*, 391 U.S. 123 (1968) (holding a defendant's rights under the Confrontation Clause are violated by the introduction of a non-testifying codefendant's confession which names and incriminates the defendant in a joint trial).

(Doc. 9-26 at 32). The trial court summarily denied the claim pursuant to *Strickland* (Doc. 9-37 at 68-69). The Fifth DCA affirmed *per curiam* (Doc. 9-30 at 105).

Rule 3.151(1)(b) of the Florida Rules of Criminal Procedure states that two or more indictments "shall be consolidated for trial on a timely motion by a defendant or by the state." The rule does not define a "timely motion." Florida courts have held that "when the period between consolidation and trial is so short that the defendant is denied a reasonable opportunity to prepare a defense for a joint trial, such a defendant has been clearly prejudiced." *Williams v. State*, 600 So. 2d 540, 541 (Fla. 1st DCA 1992). In *Williams*, the First DCA held that consolidation two days before trial resulted in prejudice. *Id.*; *see also Oliver v. State*, 569 So.2d 1332 (Fla. 1st DCA 1990) (holding that consolidation one day before trial amounts to *per se* prejudice).

The motion to consolidate was filed on March 30, 2007, or ten days before trial (Doc. 30-1). Petitioner has not cited to, and this Court has not found, any case law suggesting that a motion to consolidate ten days prior to trial amounts to *per se* prejudice, and Petitioner has not shown that counsel's failure resulted in prejudice because there is no indication that an objection on this basis would have been granted. Moreover, although Petitioner states that the defense was not prepared for a joint trial, he has not pointed to any witnesses he was unable to call, nor does he provide the Court with any defenses he was unable to raise as a result of the consolidation.[4] Petitioner's conclusory

---

[4] No *Bruton* issue was alleged to have occurred at the joint trial.

claim does not sustain a claim for ineffective assistance of counsel. *See Tejeda v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) (stating vague, conclusory, speculative and unsupported claims cannot support relief for ineffective assistance of counsel). The state court's denial of this claim was not contrary to, or an unreasonable application of, *Strickland.* Accordingly, this claim is denied pursuant to § 2254(d).

### C. Claim Three

Petitioner asserts that trial counsel was ineffective for failing to request a *Richardson*[5] hearing and move for a continuance of the trial (Doc. 1 at 10). In support of this claim, Petitioner contends that such a hearing was necessary because the State untimely disclosed an exculpatory FDLE report.[6] *Id.* Petitioner raised this claim in his Rule 3.850 proceedings, and the trial court summarily denied the claim pursuant to *Strickland* (Doc. 9-27 at 69-70). The trial court reasoned that the State did not receive the report from the FDLE until April 3, 2007, therefore the disclosure was timely and no discovery violation occurred. *Id.* at 69. The Fifth DCA affirmed *per curiam* (Doc. 9-30 at 105).

---

[5] *Richardson v. State*, 246 So. 2d 771 (Fla. 1971) (holding that the trial court must conduct an inquiry after a discovery violation is brought to its attention to determine whether the evidence that was withheld was admissible, what sanctions should be imposed, and whether the withholding of evidence prejudiced the opposition's ability to prepare for trial).

[6] The report was disclosed on April 4, 2007, five days before jury selection and nine days before the trial commenced (Doc. Nos. 9-1 at 10; 9-12 at 94). The report noted that hairs were found at the location of the victim's body (Doc. 9-28 at 104). The report referenced a Caucasian hair and two African American hairs (Doc. 9-2 at 37-39).

Rule 3.220(b) of the Florida Rules of Criminal Procedure provide that within fifteen days after being served with a notice of discovery, the prosecutor shall disclose numerous items, including a list of witnesses and reports or statements of experts. The parties have a continuing duty to promptly disclose any additional items if such is discovered subsequent to the compliance with the rules. Fla. R. Crim. P. 3.220(j).

The State received the report analyzing hairs found at the victim's gravesite on April 3, 2007 and disclosed the report the next day. The evidence was discovered beyond the 15-day period, and upon its receipt, it was timely disclosed to Petitioner five days prior to trial, consistent with the State's continuing duty to disclose. Petitioner has not demonstrated prejudice because the defense had time to consider the evidence and thus, no continuance was necessary. In any event, Petitioner's claim that the FDLE report was exculpatory amounts to mere speculation. Kelly May ("May"), a crime laboratory analyst for the FDLE, testified the victim's gravesite was in a public location, and hairs can be easily transferable from person to person and object to object (Doc. 9-20 at 37-38). May also noted that the victim's body was found by Caucasian people, and there were other Caucasian people at the gravesite including herself and the medical examiner. *Id.* at 39. Petitioner has not demonstrated that counsel acted deficiently with regard to this matter or that he sustained prejudice. Accordingly, this claim is denied pursuant to § 2254(d).

### D.     Claim Four

Petitioner alleges trial counsel was ineffective for failing to object to Captain Brian Skinner's ("Skinner") testimony regarding whether a serial killer could be responsible for

the murder of the victim (Doc. 1 at 11). Skinner testified on behalf of co-defendant Jackson (Doc. 9-20 at 87). Petitioner contends that a *Scipio*[7] violation occurred when Jackson's attorney failed to inform him of this potential testimony (Doc. 1 at 11). Petitioner raised this claim in his Rule 3.850 motion, and the trial court summarily denied the claim, concluding that no *Scipio* violation had occurred (Doc. 9-27 at 70). The Fifth DCA affirmed *per curiam* (Doc. 9-30 at 105).

*Scipio* requires the State to disclose a material change in any statement or testimony that has previously been disclosed. 928 So. 2d at 1142-43. Petitioner has not shown that *Scipio* applies to disclosures made between co-defendants. Furthermore, there is no indication that Skinner materially changed his testimony or that Skinner's testimony was prejudicial to Petitioner. Accordingly, claim four is denied pursuant to § 2254(d).

### E.      Claim Five

Petitioner asserts trial counsel was ineffective for failing to object to the redacted telephone conversation between himself and Hunt (Doc. 1 at 11). Petitioner states that the trial court should have listened to the recording. *Id.* at 12. Petitioner also notes that there were times the recording was inaudible, which suggested that the State had doctored the copy of the recording. *Id.* Petitioner contends that the transcript of the conversation differed from what was actually heard on the recording. *Id.* Petitioner raised this claim in his Rule 3.850 motion, and the trial court denied the claim, concluding that any argument

---

[7] *Scipio v. State*, 928 So. 2d 1139 (Fla. 2006).

that the conversation was doctored was speculative (Doc. 9-27 at 70). The Fifth DCA affirmed *per curiam* (Doc. 9-30 at 105).

This issue was raised during the trial and thus, Petitioner's claim is refuted. The defense asked the trial court to listen to the original recorded telephone conversation and compare it with the transcript that the State sought to introduce (Doc. 9-15 at 88). Defense counsel argued first, that the tape should not be introduced into evidence, and second, that the jury should not be allowed to view the transcript prepared by the State. *Id.* at 89. The State played the recorded conversation for the trial court. *Id.* at 117-36. The trial court compared the recording with the transcript and ruled that the recorded conversation was admissible. *Id.* at 128. Additionally, the trial court found that the jury could use the transcript while listening to the recording. *Id.*

Petitioner has not shown that trial counsel's actions amounted to deficient performance or that he sustained prejudice. There is no indication that any additional argument on this matter was necessary. Moreover, Petitioner merely speculates, without providing any evidence, that the recording was doctored. Accordingly, claim five is denied pursuant to § 2254(d).

**F.    Claim Six**

Petitioner claims that trial counsel was ineffective for failing to object to inadmissible prior statements made by Hunt and Allen (Doc. 1 at 12). Petitioner contends that the theory of the defense was that Hunt and Allen "lied from the very beginning," Hunt was involved in the murder and purposely misidentified Petitioner, and pursuant

to *Peterson*[8], their statements were inadmissible. *Id.* Additionally, Petitioner contends that counsel should have challenged the testimony of Vreen and Morris, who had motives to help Hunt. *Id.* Finally, Petitioner states that counsel should have pointed out the discrepancies in the witnesses' testimony and sought a stipulation from the State regarding their inconsistent testimony. *Id.* Petitioner raised this claim in his Rule 3.850 motion, and the trial court denied the claim, concluding that *Peterson* did not apply in this case (Doc. 9-27 at 71). The Fifth DCA affirmed *per curiam* (Doc. 9-30 at 105).

Petitioner has not demonstrated that the testimony of Hunt, Allen, Vreen, and Morris was inadmissible. The State did not introduce any prior consistent statements in order to bolster the witnesses' testimony. *See* Doc. Nos. 9-14 at 129-37;9-15 at 1-58; 9-16 at 28-81 (testimony of Morris); Doc. Nos. 9-16 at 93-132; Doc. 9-17 at 1-16 (testimony of Vreen); Doc. 9-17 at 25-114 (testimony of Allen); and Doc. Nos. 9-18 at 13-129; 9-19 at 1-133; 9-20 at 10-18 (testimony of Hunt). Moreover, defense counsel thoroughly cross-examined each witness, explored any motive for their testimony, and questioned why they did not immediately call police the evening the victim was kidnapped. *Id.* Petitioner merely speculates that these witnesses lied because they had motives to help Hunt. However, Petitioner's speculation will not sustain a claim of ineffective assistance of counsel. Counsel had no basis to object to the witnesses' testimony or seek a stipulation

---

[8] *Peterson v. State*, 874 So. 2d 14 (Fla. 4th DCA 2004) (holding that prior consistent statements are generally inadmissible to corroborate or bolster a witness's testimony; however, such statements are admissible to rebut an express or implied accusation of recent fabrication, improper motive, or improper influence).

from the State, and therefore, this claim is denied pursuant to § 2254(d).

### G. Claim Seven

Petitioner contends that counsel was ineffective for failing to secure his presence at a critical stage in the proceedings (Doc. 1 at 13). On the second day of trial, the State and defense addressed matters regarding hearsay testimony and the recorded telephone conversation (Doc. 9-15 at 69-75). The trial court noted on the record that the defendants had been returned to the jail and therefore, were not present for the arguments. *Id.* at 75. The following morning, Petitioner waived his presence at the discussions held the prior afternoon (Doc. 9-16 at 14-15). Petitioner raised this claim in his Rule 3.850 motion, and the trial court denied the claim pursuant to *Strickland* (Doc. 9-27 at 71). The Fifth DCA affirmed *per curiam* (Doc. 9-30 at 105).

Pursuant to the Sixth Amendment, a defendant has a right to be present "'at any stage of the criminal proceeding that is critical to its outcome if [the defendant's] presence would contribute to the fairness of the procedure.'" *Donaldson v. State*, 985 So. 2d 63, 64 (Fla. 2d DCA 2008) (quoting *Kentucky v. Stincer*, 482 U.S. 730, 745 (1987)). Federal and state courts have held that conferences in which evidentiary matters are discussed are not critical stages requiring a defendant's presence. *See United. States. v. Vasquez,* 732 F.2d 846, 848–49 (11th Cir. 1984); *Wright v. State*, 688 So. 2d 298 (Fla. 1996). Therefore, Petitioner cannot demonstrate deficient performance on the part of counsel because Petitioner was not absent from a critical stage in the proceedings. Alternatively, Petitioner waived his presence in open court. Petitioner has not shown that his waiver was involuntary or

unintelligent. *See Windh v. State*, 113 So. 3d 150, 151 (Fla. 2d DCA 2013). Accordingly, claim seven is denied pursuant to § 2254(d).

## H.    Claim Eight

Petitioner asserts that trial counsel was ineffective for failing to file a motion in limine to exclude Vreen's identification of him on the basis that the identification was tainted by a suggestive photographic lineup (Doc. 1 at 14). Petitioner raised this claim in his Rule 3.850 motion, and the trial court summarily denied relief, noting that counsel objected to Vreen's identification and the objection was overruled (Doc. 9-27 at 72). The Fifth DCA affirmed *per curiam* (Doc. 9-30 at 105).

The record supports the trial court's findings. Defense counsel objected to Vreen's identification of Petitioner on the basis that police showed only a single driver's license photograph rather than a photo lineup (Doc. 9-16 at 120). After a discussion on the matter, the trial court overruled the objection and found that Vreen's in-court identification of Petitioner would not be excluded. *Id.* at 122. Petitioner has not demonstrated deficient performance on the part of counsel or prejudice. There is no indication that had counsel filed a motion in limine prior to trial that it would have been granted. Claim eight is therefore denied pursuant to § 2254(d).

## I.    Claim Nine

Petitioner alleges trial counsel was ineffective for failing to object to several instances of prosecutorial misconduct (Doc. 1 at 15). Petitioner contends that the prosecutor made approximately twenty or more improper statements during closing

wherein he improperly vouched for witnesses, misstated the facts, commented on matters not in evidence, shifted the burden of proof, disparaged the defense and impugned his character, and improperly invaded the province of the jury. *Id.* at 15-17. Petitioner raised this claim in his Rule 3.850 motion, and the trial court summarily denied relief pursuant to *Strickland* (Doc. 9-27 at 73-77). The Fifth DCA affirmed *per curiam* (Doc. 9-30 at 105)

The Court has reviewed the State's closing argument (Doc. 9-22 at 56-89) and concludes that Petitioner's claim is without merit. Although "attempts to bolster a witness by vouching for his credibility are normally improper and constitute error," *United States v. Newton*, 44 F.3d 913, 921 (11th Cir. 1995) (citations omitted), the Court concludes that the comments made by the prosecutor were proper. In this case, the prosecutor made reasonable inferences from the testimony and evidence presented at trial. The prosecutor's suggestion that the State witnesses were not lying was a permissible inference based on their corroborated testimony. Petitioner has not shown that the comments improperly appealed to the juror's emotions or that they were in some way derogatory or inflammatory. Florida courts allow attorneys wide latitude during closing arguments. *Thomas v. State*, 748 So. 2d 970, 984 (Fla. 1999). The Florida Supreme Court has stated that "[l]ogical inferences may be drawn, and counsel is allowed to advance all legitimate arguments." *Id.*

Additionally, the closing argument did not shift the burden of proof or argue facts not in evidence. The closing argument consisted of fair interpretations made by the

prosecutor based on the testimony presented at trial. Furthermore, to the extent any comments can be read as shifting the burden of proof, the trial court instructed the jury on the burden of proof standard (Doc. 9-24 at 22-23). Jurors are presumed to follow the court's instructions. *See Brown v. Jones*, 255 F.3d 1273, 1280 (11th Cir. 2001). The trial court also instructed the jury that they should rely on their own recollection of the evidence and that attorneys' statements did not constitute evidence (Doc. 9-22 at 56).

The Court concludes that counsel was not deficient for failing to object to the prosecutor's comments. Petitioner also has not demonstrated that the comments affected the outcome of the trial or rendered the trial fundamentally unfair because each statement was a permissible inference the State could draw from the evidence and testimony presented at trial. *See Williams v. Kemp*, 846 F.2d 1276, 1283 (11th Cir. 1988) (stating a trial is rendered fundamentally unfair if "there is a reasonable probability that, but for the prosecutor's offending remarks, the outcome . . . would have been different . . ."). Accordingly, claim nine is denied pursuant to § 2254(d).

### J.    Claim Ten

Petitioner contends that trial counsel was ineffective for failing to object when Jackson's attorney conceded his guilt during closing argument (Doc. 1 at 17). Petitioner raised this claim in his Rule 3.850 motion, and the trial court summarily denied the claim, concluding the claim was refuted by the record (Doc. 9-27 at 77). The Fifth DCA affirmed *per curiam* (Doc. 9-30 at 105).

The record refutes Petitioner's claim. Jackson's attorney argued that the State

failed to prove Jackson committed the murder (Doc. 9-23 at 2, 23-24). Jackson's attorney stated that even if Jackson were with the victim that evening, the State had not produced evidence of how or when the victim was killed (Doc. 9-23 at 2, 23-24). Jackson's theory of defense was that someone else had killed the victim after Jackson released her. *Id.* Jackson's attorney never conceded Petitioner's guilt. *Id.* at 2-37.

Petitioner has not demonstrated that counsel's performance was deficient because counsel had no basis to object to the closing argument. Additionally, Petitioner's attorney strenuously argued that there was no evidence connecting Petitioner to the crimes. *Id.* at 39-65. Petitioner's attorney did not concede his guilt and argued that the jury should acquit him. *Id.* Therefore, Petitioner cannot show prejudice. Accordingly, claim ten is denied pursuant to § 2254(d).

### K.     Claim Eleven

Petitioner alleges trial counsel was ineffective for failing to object to inadmissible hearsay (Doc. 1 at 18). Specifically, Petitioner contends that Jessica Smith ("Smith"), Morris, and Vreen each testified to hearsay statements made by the victim. *Id.* Additionally, Petitioner asserts that V'Shawn Miles ("Miles"), Thomas, Vreen, Allen, and Hunt testified to inculpatory hearsay statements made by Jackson referencing his involvement in the case.[9] *Id.* Petitioner also argues that this testimony violated his rights

---

[9]  The comments made by Jackson included: (1) Miles testified that Jackson made the comment "No body, no case" when the murder of the victim was mentioned (Doc. 9-20 at 29); (2) Thomas testified that Jackson kept telling the victim to be quiet while she was tied up in his bathroom and that Jackson threatened him if he told police (Doc. 9-18

under the Confrontation Clause. *Id.*

Petitioner raised this claim in his Rule 3.850 motion, and the trial court summarily denied the claims regarding Smith and Morris' alleged hearsay statements (Doc. 9-27 at 78). The trial court determined that the remainder of this claim was insufficiently pled and struck the claim with leave to amend. *Id.* at 79. Petitioner later amended the claim, and the trial court summarily denied relief, concluding that the statements were admissible against Jackson and did not relate to Petitioner (Doc. 9-29 at 39). The trial court also noted that none of the statements made were testimonial, and consequently, counsel had no basis to object. *Id.* The Fifth DCA affirmed *per curiam* (Doc. 9-30 at 105).

Smith testified that she saw the victim, her cousin, on the evening she disappeared and the victim said she was "going with her friend" (Doc. 9-13 at 127). Even assuming that this hearsay testimony was offered to prove the truth of the matter asserted—that the victim was meeting a friend—Petitioner cannot demonstrate prejudice. Jackson's attorney used this testimony to argue that someone unrelated to the defendants had kidnapped the victim and murdered her (Doc. 9-14 at 1-2). This defense theory was also beneficial to Petitioner. Thus, there is no indication that but for counsel's actions, the result of the proceeding would have been different.

---

at 4, 7-9); (3) Vreen testified that Jackson asked the victim where his stolen drugs and money were (Doc. 9-16 at 106-07); (4) Allen testified Jackson told her "it didn't happen like that" when she asked if the victim drowned and that Jackson asked her to help him (Doc. 9-17 at 74, 78); and (5) Hunt testified that Jackson told him to look in the bathroom, where the victim was tied up, and that he was not worried about being caught because police would not find a body (Doc. Nos. 9-18 at 38 and 75; 9-19 at 129).

Morris testified that the victim told him about a potential robbery she was going to commit (Doc. 9-15 at 1-2). Jackson's attorney objected to additional testimony about this matter, and the objection was overruled. *Id.* at 3-4. Therefore, defense counsel was not deficient for failing to object. Furthermore, the statement was not offered for the truth of the matter asserted but rather to explain Morris' actions of picking up the victim and driving her to Vreen's house. *See* § 90.801(1)(c), Fla. Stat. (defining hearsay as "a statement, other than one made by the declarant while testifying. . . offered in evidence to prove the truth of the matter asserted). Therefore, any additional objection would have been overruled. The only hearsay testimony submitted with regard to Vreen was that the victim told Jackson she gave the stolen items to her cousin (Doc. 9-16 at 106-07). Again, this statement was not offered to prove the truth of the matter—that the victim gave drugs and money to her cousin—but to explain Jackson's motive for kidnapping and murdering the victim.

Furthermore, the Court agrees that the testimony of Vreen, Miles, Thomas, Allen, and Hunt regarding statements made by Jackson were admissible because they were party admissions. *See* § 90.803(18)(a), Fla. Stat. (noting that a statement offered against a party is admissible if it is that party's own statement). Petitioner has not demonstrated that Jackson's statements were improperly attributed to him. Moreover, Petitioner has not shown that counsel's failure to object resulted in prejudice because there is no indication that exclusion of these statements would have yielded an acquittal.

To the extent Petitioner also argues that this testimony violated *Crawford v.*

*Washington*, 541 U.S. 36, 53-54 (2004), his claim is without merit. The *Crawford* Court held that the "admission of testimonial statements of a witness who did not appear at trial" violates the Confrontation Clause "unless he was unavailable to testify, and the defendant   had . . . a prior opportunity for cross-examination." *Id.* The Court defined testimonial statements as those consisting of ex parte in-court testimony or its functional equivalent (affidavits, custodial examinations), extrajudicial statements, and statements made under circumstances which would lead an objective witness to reasonably believe that the statement would be available for use at a later trial. *Id.*

The hearsay statements at issue were not testimonial because they were not made under circumstances in which the victim or Jackson would have reasonably believed that the statement would later be used at trial. Instead, the statements were made to other witnesses on the day the offenses were committed and within the weeks before the victim's body was located. Accordingly, claim eleven is denied pursuant to § 2254(d).

**L.    Claim Twelve**

Petitioner contends that trial counsel was ineffective for failing to provide him with copies of the depositions taken in this case (Doc. 1 at 19). Petitioner raised this claim in his Rule 3.850 motion, and the trial court denied the claim pursuant to *Strickland* (Doc. 9-27 at 79). The Fifth DCA affirmed *per curiam* (Doc. 9-30 at 105).

Petitioner has not demonstrated that he is entitled to relief on this claim. Although Petitioner states that counsel failed to impeach "main witnesses" and did not point out contradictory statements made by witnesses, he has not cited to any specific testimony of

any witness that could have been impeached. The record reflects that counsel thoroughly cross-examined each witness, questioned each witness' motive for testifying, and attempted to point out any inconsistencies in the testimony. Petitioner's claim is vague and conclusory, and as such, will be denied pursuant to § 2254(d).

### M.    Claim Thirteen

Petitioner alleges that counsel was ineffective for failing to object to Morris' testimony that he was threatened by Petitioner (Doc. 1 at 19). Petitioner raised this claim in his Rule 3.850 motion, and the trial court summarily denied relief, noting that although the trial court had excluded this testimony, Petitioner opened the door by speaking about the threat during his own testimony (Doc. 9-27 at 79-80). The Fifth DCA affirmed *per curiam* (Doc. 9-30 at 105).

At the beginning of trial, Morris informed the prosecutor that he was threatened by Petitioner while he was seated in the courtroom (Doc. 9-15 at 77-78). According to Morris, Petitioner used a form of prison sign language in order to state that he would kill Morris. *Id.* at 78. The victim advocate observed Petitioner signing in their direction but could not make out what Petitioner had spelled. *Id.* at 79. The trial court granted the motion to exclude this testimony. *Id.* at 86. Morris was not questioned about this matter (Doc. 9-16 at 28-76). Petitioner testified, and during cross-examination, the prosecutor asked Petitioner if he knew Morris (Doc. 9-22 at 32). Petitioner responded, "Now I do, but I didn't. They said that's the guy that I was supposed to have threatened the other day in the courtroom." *Id.* The State then questioned Petitioner regarding the sign language

threat. *Id.* The State also called the victim advocate and Morris as rebuttal witnesses to testify about the threat. *Id.* at 44-49.

Defense counsel had no basis to object to this questioning because Petitioner opened the door to the information by voluntarily testifying about the matter. Therefore, Petitioner cannot demonstrate deficient performance on the part of counsel. Additionally, there was sufficient evidence to convict Petitioner even assuming this testimony was improper. Consequently, Petitioner has not shown that he was prejudiced. Accordingly, this claim is denied pursuant to § 2254(d).

### N.    Claim Fourteen

Petitioner argues that trial counsel was ineffective for failing to impeach Hunt, Vreen, and Morris (Doc. 1 at 20). Specifically, Petitioner contends that Hunt should have been impeached with his statements to Patrick Maynor ("Maynor"), Michael Jones ("Jones"), Jason Felton ("Felton"), Demtrius Demons ("Demons"), and Martin Fluker ("Fluker"), wherein he allegedly admitted to each that he lied about Petitioner being involved in the crimes. *Id.* Petitioner also contends that Vreen and Morris' testimony should have been impeached with testimony from Fluker, who would have refuted Morris' version of events. *Id.* Finally, Petitioner contends that counsel should have impeached Allen's testimony by calling Maynor and Jones, who would have testified that Hunt told Allen what to say to the police. *Id.* at 21. The trial court held an evidentiary hearing on these claims (Doc. 9-30 at 105).

At the hearing, Petitioner testified that he wanted to call Maynor, Jones, Felton,

and Demons as witnesses at trial to impeach Hunt's testimony; however, defense counsel Quarles only called Wallace as a witness (Doc. 9-29 at 74). According to Petitioner, Quarles told him that they did not need the other witnesses. *Id.* at 75. Maynor testified he spoke to Hunt several times in the county jail, and Hunt told him that he had made a mistake and had allowed people to get "caught up in this situation" that were not actually involved. *Id.* at 90-92. Hunt told Maynor that he was afraid of Jackson and had not told the truth about what happened regarding the victim's murder. *Id.* at 92-94. On cross-examination, Maynor stated that he told Petitioner's lawyer that Hunt had lied and was directing Allen's testimony. *Id.* at 100-01. Felton testified Hunt had told him that Petitioner was not involved in the crime, and he had lied because he was scared of Jackson. *Id.* at 107-08. Felton recalled giving a deposition but testified that he never was called to testify at trial. *Id.* at 109-110.

Quarles testified that he recalled deposing Maynor and Felton; however, he was not sure if he deposed Jones. *Id.* at 123. Quarles made a decision to call Wallace as the sole defense witness, aside from Petitioner, because he and co-counsel believed that Wallace was the most credible witness. *Id.* at 123-25. Furthermore, counsel believed that Maynor and Felton's testimony would have been cumulative to Wallace's testimony. *Id.* at 126. Quarles then testified that he could not recall investigating Fluker as a witness. *Id.* Additionally, Quarles testified that none of the potential witnesses told him that Allen had fabricated her testimony at Hunt's request. *Id.* at 128, 130.

The trial court accepted Quarles' testimony as credible and found that Quarles

made a strategic decision to call only one defense witness instead of four or more witnesses. *Id.* at 155. The trial court concluded that Petitioner failed to meet his burden of demonstrating that counsel acted deficiently with regard to this claim. *Id.* at 155-56. The Fifth DCA affirmed *per curiam* (Doc. 9-30 at 105).

This Court must accept the state court's credibility determinations. *See, Baldwin*, 152 F.3d at 1316; *Consalvo*, 664 F.3d at 845. The record reflects that Quarles investigated calling other witnesses, including Maynor and Felton; however, he made a strategic decision only to call Wallace. *See Strickland*, 466 U.S. at 690 ("strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable."). Petitioner has not demonstrated that this strategy was unreasonable.

Additionally, Petitioner did not call Jones, Demons, and Fluker as witnesses at the evidentiary hearing. "[E]vidence about the testimony of a putative witness must generally be presented in the form of actual testimony by the witness or an affidavit. A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim." *United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991) (footnotes omitted); *Wright v. Sec'y, Dep't of Corr.*, No. 6:08-cv-618-Orl-35DAB, 2009 WL 5176558, at *3 (M.D. Fla. Dec. 23, 2009). Petitioner has not made the requisite factual showing with regard to these witnesses, and his self-serving speculation will not sustain a claim of ineffective assistance of counsel.

Further, Petitioner has not demonstrated that counsel's failure to call these witnesses resulted in prejudice because he has not met his burden of proving that the

result of the proceeding would have been different in light of the evidence presented. Accordingly, claim fourteen is denied pursuant to § 2254(d).

### O.    Claim Fifteen

Petitioner contends that trial counsel was ineffective for failing to object to a statement made by the prosecutor during voir dire (Doc. 1 at 21). In support of this claim, Petitioner contends that the prosecutor improperly told the jury that the State did not have to prove its case beyond a reasonable doubt. *Id.* Petitioner raised this claim in his Rule 3.850 motion, and the trial court denied the claim, concluding that the prosecutor's statement was not erroneous (Doc. 9-27 at 80). The Fifth DCA affirmed *per curiam*. (Doc. 9-30 at 105).

During voir dire, the prosecutor stated that reasonable doubt is a "binding conviction of guilt" (Doc. 9-4 at 86). Additionally, the prosecutor told the jury that reasonable doubt is not "speculation or imaginary or possible doubts." *Id.* Furthermore, the prosecutor said, "I want to make clear that the burden on the prosecution is never to prove guilt to a 100 percent absolute scientific certainty." *Id.*

Petitioner has not shown that counsel was deficient for failing to object. The prosecutor's statement was a fair comment on the reasonable doubt standard. *See* Fla. Std Jury Instr. 3.7 (Crim) (defining reasonable doubt and noting that a reasonable doubt "is not a mere possible doubt, a speculative, imaginary or forced doubt."). Moreover, Petitioner cannot demonstrate that but for this statement, the result of the proceedings would have been different. The trial judge instructed the jury on the reasonable doubt

standard (Doc. 9-24 at 22-23). Jurors are presumed to follow the court's instructions. *See Brown*, 255 F.3d at 1280. Accordingly, claim fifteen is denied pursuant to § 2254(d).

### P.    Claim Sixteen

Petitioner contends that trial counsel was ineffective for failing to request a separate jury from his co-defendant (Doc. 1 at 22). Petitioner contends that Jackson's attorney had potential jurors stricken from the venire that he wanted on his jury. *Id.* Additionally, Petitioner contends that because Jackson was striking jurors, he attempted to get Jackson's attention during voir dire, which led to the false "threat" incident wherein Morris told the prosecutor and court that Petitioner threatened his life. *Id.* Petitioner raised this claim on direct appeal, and the trial court summarily denied the claim pursuant to *Strickland* (Doc. 9-27 at 81).

Petitioner has not demonstrated that he is entitled to relief on this claim. First, Petitioner has not pointed to any specific juror that he wanted who was stricken from the venire. Additionally, he has not shown that any juror was actually biased against him. *See Jean v. Sec'y, Dep't of Corr.*, No. 2:14-CV-276-FTM-38CM, 2017 WL 1196571, at *10 (M.D. Fla. Mar. 31, 2017) (citing *Smith v. Phillips*, 455 U.S. 209, 215 (1982); *Rogers v. McMullen*, 673 F.2d 1185, 1189 (11th Cir. 1982) (defendant's Sixth Amendment right to a fair and impartial jury was not violated absent a showing that a jury member hearing the case was actually biased against him). Finally, as the trial court noted *supra* in relation to claim thirteen, the introduction of the threat evidence was invited by Petitioner's own testimony and did not result in prejudice. Accordingly, claim sixteen is denied pursuant

to § 2254(d).

**Q.    Claim Seventeen**

Petitioner argues that the cumulative effect of the errors in claims one through sixteen were such that a new trial is warranted (Doc. 1 at 22-23). Petitioner has not shown an error of constitutional dimension with respect to any federal habeas claim. Therefore, he cannot show that the cumulative effect of the alleged errors deprived him of fundamental fairness in the state criminal proceedings. *See Morris v. Sec'y, Dep't of Corr.*, 677 F.3d 1117, 1132 (11th Cir. 2012) (refusing to decide whether post-AEDPA claims of cumulative error may ever succeed in showing that the state court's decision on the merits was contrary to or an unreasonable application of clearly established law, but holding that petitioner's claim of cumulative error was without merit because none of his individual claims of error or prejudice had any merit). Petitioner is not entitled to federal habeas relief on claim seventeen, and consequently, it is denied.

**R.    Claim Eighteen**

Petitioner asserts that trial counsel was ineffective for failing to file a motion for new trial so that the trial court would reweigh the evidence (Doc. 1 at 22-23). Petitioner raised this claim in his Rule 3.850 motion, and the trial court summarily denied the claim, finding that there was competent, substantial evidence to support Petitioner's convictions (Doc. 9-27 at 81). The trial court concluded that Petitioner had not demonstrated prejudice (Doc. 9-27 at 81). The Fifth DCA affirmed *per curiam* (Doc. 9-26 at 26).

Pursuant to Rule 3.600(a)(2) of the Florida Rules of Criminal Procedure, a trial

court may grant a new trial if the "verdict is contrary to the law or the weight of the evidence." In considering a motion for new trial, the trial court "must exercise its discretion to determine whether a greater amount of credible evidence supports an acquittal." *Ferebee v. State*, 967 So.2d 1071, 1073 (Fla. 2d DCA 2007) (citation omitted). A trial court may "weigh the evidence and determine the credibility of witnesses . . . ." *Id.* (quotation omitted).

Petitioner merely speculates that had counsel filed a motion for new trial, such would have been granted. However, there was sufficient evidence to convict Petitioner. There is no indication that the trial court would have reweighed the evidence and found the convictions were not supported by the evidence in light of the fact that the trial judge denied the motions for judgment of acquittal. Petitioner has not demonstrated that counsel's failure to file a motion for new trial resulted in prejudice. Accordingly, this claim is denied pursuant to § 2254(d).

### S.    Claim Nineteen

Petitioner asserts that trial counsel was ineffective for failing to file a motion for new trial in light of newly discovered and previously unavailable evidence (Doc. 1 at 24). In support of this claim, Petitioner contends that during the penalty phase, he received a letter from inmate Ryan Brown ("Brown"), who allegedly spoke to Bush while housed in the Volusia County Jail. *Id.* Petitioner states that Brown's letter indicated that Bush told Brown that Hunt admitted to lying about Petitioner's involvement in the case. *Id.*

Petitioner raised this claim in his Rule 3.850 motion, and the trial court denied the

claim pursuant to *Strickland*, concluding Petitioner could not show prejudice because the letter was inadmissible (Doc. 9-27 at 82). The Fifth DCA affirmed *per curiam* (Doc. 9-30 at 105).

Brown and Bush did not testify at Petitioner's trial. Therefore, a letter written by Brown about statements made by Bush would amount to hearsay. Furthermore, any statements by Bush regarding anything that Hunt told him would be double hearsay. Thus, Brown's letter was not admissible, and Petitioner has not demonstrated deficient performance on the part of counsel because a motion for new trial would not have been meritorious. Moreover, defense counsel impeached Hunt regarding his motives for testifying. Thus, Petitioner fails to show that he sustained prejudice. Accordingly, this claim is denied pursuant to § 2254(d).[10]

## T.    Claim Twenty

Petitioner contends that the evidence was insufficient to convict him of first degree

---

[10] To the extent Petitioner includes an allegation of actual innocence in relation to claim nineteen (Doc. 13 at 12), the Court concludes that he is not entitled to relief. The Supreme Court has "not resolved whether a prisoner may be entitled to habeas relief based on a freestanding claim of actual innocence." *McQuiggin v. Perkins*, 133 S. Ct. 1924, 1931 (2013) (citing *Herrera v. Collins*, 506 U.S. 390, 404-05 (1993)). However, the Eleventh Circuit, which this Court must follow, "forbids granting habeas relief based upon a claim of actual innocence, anyway, at least in non-capital cases." *Jordan v. Sec'y, Dep't of Corr.*, 485 F.3d 1351, 1356 (11th Cir. 2007) (citations omitted). Assuming Petitioner could raise a freestanding actual innocence claim, he would be required to show that "in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Schlup v. Delo*, 513 U.S. 298, 329 (1995). Petitioner has not met this high standard, and accordingly, his actual innocence claim is denied.

felony murder (Doc. 1 at 41). Petitioner raised this claim on direct appeal, and the Fifth DCA affirmed *per curiam* (Doc. 9-26 at 26).

The United States Supreme Court has held that when reviewing an insufficiency of the evidence claim in a habeas petition, a federal court must determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Owen v. Sec'y for Dept. of Corr.*, 568 F.3d 894, 918 (11th Cir. 2009). The court must assume that the jury resolved any evidentiary conflicts in favor of the prosecution, and the court must defer to that resolution. *Jackson*, 443 U.S. at 326; *Johnson v. Alabama*, 256 F.3d 1156, 1172 (11th Cir. 2001). Additionally, the Court must defer to the judgment of the jury in determining the credibility of witnesses and in weighing the evidence. *See Schlup v. Delo*, 513 U.S. 298, 330 (1995); *Johnson*, 256 F.3d at 1172.

To convict Petitioner of felony murder, the State had to prove that (1) the victim was dead, (2) the death occurred as a consequence of or while Petitioner was committing a kidnapping, and (3) either Petitioner actually killed the victim or Petitioner aided and abetted in committing the kidnapping. *See* §§ 777.011, 782.04, Fla. Stat (2004). Florida courts have held that "'[f]elons are generally held responsible for the acts of their cofelons." *Padron v. State*, 220 So. 3d 500, 503 (Fla. 3d DCA 2017) (quoting *Barron v. State*, 990 So. 2d 1098, 1104 (Fla. 3d DCA 2007)). "One who participates with another in a common criminal scheme is guilty of all crimes committed in furtherance of that scheme

33

regardless of whether he or she physically participates in that crime." *Lovette v. State*, 636 So. 2d 1304, 1306 (Fla. 1994) (quoting *Jacobs v. State*, 396 So.2d 713, 716 (Fla. 1981)).

Based on the testimony presented at trial, there was sufficient evidence that Petitioner participated in the kidnapping of the victim. Multiple witnesses observed the victim tied up and held in the bathroom at Allen's home. Furthermore, witnesses saw Petitioner at Allen's home with plastic ties and gloves in his possession. Testimony was also presented that Petitioner helped Jackson place the victim in the trunk and then drove away with Jackson. Additionally, there was sufficient circumstantial evidence for the jury to conclude that the victim's death occurred as a consequence of the kidnapping and that Petitioner either personally participated in or aided and abetted Jackson in committing the murder. Thus, upon review of the record and after viewing the evidence in a light most favorable to the prosecution, the Court concludes that any rational trier of fact could have found Petitioner guilty of first degree felony murder. Accordingly, this claim is denied pursuant to § 2254(d).

### U.    Claim Twenty-One

Petitioner alleges that the State improperly cross-examined witness Quentin Wallace ("Wallace") and revealed the nature of his prior convictions (Doc. 1 at 42). Petitioner raised this claim on direct appeal, and the Fifth DCA affirmed *per curiam* (Doc. 9-26 at 26).

Prior to the cross-examination of Wallace, the State requested a sidebar with the defense and trial court to discuss impeaching Wallace with the nature of his prior

convictions (Doc. 9-20 at 110). The State was of the opinion that Wallace had incorrectly testified regarding the number of his prior convictions. *Id.* The State also noted it had certified copies of Wallace's judgments and sentences. *Id.* The trial court allowed the defense to first attempt to clarify the matter with Wallace before he was cross-examined but also ruled that the nature of the prior convictions were admissible. *Id.* at 114-15. During the reopened direct examination, Wallace admitted that he was convicted of two felony counts in one case. *Id.* at 115. Wallace then admitted during cross-examination that he was serving a twenty-five-year sentence for aggravated child abuse. *Id.* at 117.

Florida law provides that a party may impeach a witness when he does not admit to the number of prior convictions by using certified copies of the judgments of those convictions. *Kelly v. State*, 198 So. 3d 1077, 1078–79 (Fla. 5th DCA 2016). When a prior conviction is entered into evidence, an attorney may then inquire into the number and nature of the prior convictions. *Id.* (citing *Wilcox v. State*, 143 So. 3d 359, 374 (Fla. 2014). Although the trial court allowed defense counsel to ask Wallace if he was mistaken regarding the number of his prior convictions, Wallace had already improperly testified that he had one prior conviction. At that point, the State was permitted to impeach Wallace with his prior conviction for aggravated child abuse. Petitioner has not cited any case law suggesting that it was improper to impeach Wallace in this way.

Nonetheless, even if the trial court erred in allowing the jury to learn of the nature of Wallace's prior conviction, the error was harmless. Petitioner has not shown that the error had a substantial and injurious effect or influence in determining the jury's verdict

in light of the other evidence presented at trial. *Brecht* v. *Abrahamson*, 507 U.S. 619 (1993). Accordingly, this claim is denied pursuant to § 2254(d).

## V.     Claim Twenty-Two

Petitioner contends that he was prejudiced and could not properly prepare his alibi defense because the State failed to reveal the date of the offense prior to trial (Doc. 1 at 44). Petitioner raised this claim on direct appeal, and the Fifth DCA affirmed *per curiam* (Doc. 9-26 at 26).

Petitioner has not demonstrated that he was prevented from developing his alibi defense. As was noted *supra* with regard to claim one, defense counsel testified that he was aware of the date of the offense and had investigated Petitioner's alibi defense but could not find employment records or witnesses who would support his alibi. The trial court found counsel's testimony was credible. Accordingly, claim twenty-two is denied pursuant to § 2254(d).

## W.     Claim Twenty-Three

Petitioner claims that the State's consolidation of the trials was untimely and resulted in prejudice because he was unable to properly prepare for a joint trial (Doc. 1 at 46). Petitioner raised this claim on direct appeal, and the Fifth DCA affirmed *per curiam* (Doc. 9-26 at 26).

Prior to the commencement of trial, the defense objected to the consolidation of the cases (Doc. 9-1 at 6). The only basis for the objection was any potential *Bruton* issues that may arise from having a joint trial. *Id.* at 6-10. Counsel did not argue that the motion

36

to consolidate was untimely, therefore, this issue was not preserved for appellate review. Florida law provides that errors which have not been preserved by contemporaneous objection "can be considered on direct appeal only if the error is fundamental." *Jackson v. State*, 983 So. 2d 562, 568 (Fla. 2008) (citing *Goodwin v. State*, 751 So. 2d 537, 544 (Fla. 1999). A fundamental error is "error which goes to the foundation of the case or goes to the merits of the cause of action." *Id.* (quotation omitted).

Consolidation of trials is mandated under the statute and reviewed for an abuse of discretion. *Snyder v. State*, 564 So. 2d 193, 195 (Fla. 5th DCA 1990); Fla. R. Crim. P. 3.15(1)(b) (stating a trial "shall be consolidated for trial on a timely motion by a defendant or by the state."). Petitioner has not shown that consolidation of the trials was such that fundamental error resulted. The offenses were committed together and involved the same criminal episode. *See Snyder*, 564 So. 2d at 195 (noting that a "reviewing court must consider not only the temporal association of the offenses, but also their geographic association, their nature, and the manner in which they were committed."). Furthermore, no *Bruton* violation occurred during the trial. Although Petitioner states that he was unable to properly prepare for a joint trial, he has not pointed to any defense or witness that he was unable to present or call as a result of the consolidation.

To the extent that Petitioner argues that the jury "may have" relied on testimony regarding Jackson's guilt in order to convict him, the Court concludes that this assertion is without merit. The jury was instructed as follows:

> A separate crime is charged against each defendant in each count of his

indictment. The defendants have been tried together; however, the charges against each defendant and the evidence applicable to him must be considered separately. A finding of guilty or not guilty as to one of the defendants must not affect your verdict as to any other defendant or any other crimes charged.

(Doc. 9-24 at 30-31). As the Court noted *supra*, jurors are presumed to follow instructions. Therefore, Petitioner cannot demonstrate that the consolidation of the trials amounted to fundamental error. Accordingly, claim twenty-three is denied pursuant to § 2254(d).

## X.       Claim Twenty-Four

Petitioner contends that the cumulative effect of the trial court errors was such that a new trial is required (Doc. 1 at 47). Under the cumulative error doctrine, "[e]ven where individual judicial errors or prosecutorial misconduct may not be sufficient to warrant reversal alone, we may consider the cumulative effects of errors to determine if the defendant has been denied a fair trial." *United States v. Lopez*, 590 F.3d 1238, 1258 (11th Cir. 2009) (citation omitted), "In addressing a claim of cumulative error, we must examine the trial as a whole to determine whether the appellant was afforded a fundamentally fair trial." *United States v. Calderon*, 127 F.3d 1314, 1333 (11th Cir. 1997) (citations omitted).

The Court has already concluded that no errors occurred with regard to claims twenty through twenty-three. Reviewing the trial as a whole, the cumulative effect of these alleged errors did not deprive Petitioner of a fair trial. Accordingly, this claim is denied pursuant to § 2254(d).

Any of Petitioner's allegations not specifically addressed herein have been found to be without merit.

## IV. CERTIFICATE OF APPEALABILITY

This Court should grant an application for certificate of appealability only if the Petitioner "makes a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2). To make such a showing "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also Lamarca v. Sec'y Dep't of Corr.*, 568 F.3d 929, 934 (11th Cir. 2009). However, a prisoner need not show that the appeal will succeed. *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003).

The Court concludes that Petitioner has not made the requisite showing in these circumstances. Petitioner is not entitled to a certificate of appealability.

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. The Petition for Writ of Habeas Corpus filed by Michael Wooten (Doc. 1) is **DENIED**, and this case is **DISMISSED WITH PREJUDICE**.

2. Petitioner is **DENIED** a certificate of appealability.

3. The Clerk of the Court is directed to enter judgment and close the case.

**DONE AND ORDERED** in Orlando, Florida, this 5th day of February, 2018.



GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies to:
OrlP-3 2/5
Counsel of Record
Michael Wooten